### BERKE v. TWENTY-THIRD ST. RY. Co.

*(Supreme Court, General Term, First Department. March 29, 1889.)*

HORSE AND STREET RAILROADS—INJURIES TO PERSONS ON TRACK.

Plaintiff was riding one horse and leading another when defendant's street-car came up and struck one of the horses. Plaintiff testified that the driver struck one of plaintiff's horses with his whip, which excited it, and it turned and struck the car, and both horses fell, injuring plaintiff. Passengers on the car testified that the driver flourished his whip, but did not strike plaintiff's horse, and one testified that the fall of the horses was due to ice near the track. These witnesses were not in a favorable position to see what transpired. *Held*, that a judgment for plaintiff would not be disturbed.

Appeal from circuit court, New York county.

Action by William Berke against the Twenty-Third Street Railway Company for personal injuries. Judgment for plaintiff, and defendant appeals.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Leslie W. Russell* and *W. C. Percy,* for appellant. *Freling H. Smith,* for respondent.

DANIELS, J. The plaintiff was engaged on the 18th of February, 1887, in taking two horses through Twenty-Third street, from Fourth avenue to Madison avenue. He rode one and led the other, and in passing over the street he was for a portion of the distance upon one of the railway tracks of the defendant. A car managed by a driver without a conductor followed him, and he left the track to permit the car to pass. As he was leaving the track with the horses the car approached him in such a manner as to strike the one upon which he was riding on his rump. The plaintiff testified that in consequence of this blow he was unable to manage the horses, and the car passed him. This probably is a misprint, for the plaintiff testified further that when it came up near him again the driver reached over with his whip, and struck one of the horses about his head. This, he testified, excited the horse, and he turned and struck the car, and both horses fell, with he himself underneath. By the fall the plaintiff was seriously injured, and afterwards laid up from the disability received, and to compensate him for this injury a verdict was rendered in his favor in the sum of $750. The truth of the relation given by the plaintiff of the occurrence was controverted on the part of the defendant. The driver himself of the car admitted that one of the horses was touched on the rump by the car as it passed, but denied all other interference with the plaintiff, or either of the horses. His testimony, however, was that, after the horses had been touched in the manner described by him, the plaintiff, with the horses, followed him up, and used abusive language to him; that he did not strike either of the horses with the whip, but used it to start up his own horses. The testimony of another witness who was sworn for the defendant agreed with that of the driver of the car, so far as the occurrences were observed by him. He was inside of the car next the door, near the driver. He also testified to the car striking one of the horses, but denied that either horse

was afterwards struck, or that the driver applied the whip to either one of them. He did state, however, that the driver took his whip, and lashed it in the air, adding that he supposed it was for the purpose of keeping the horses back, and without coming in contact with the man. His statement further was that "it seemed to me it was only struck once. I dont think it was struck twice. It was struck once on the hind quarter by the corner of the car, and then it jumped aside." Upon his cross-examination he added that he could state positively that the driver did not strike either horse with the whip. His attention, however, was diverted for a moment or so by the excitement of passengers in the car. Another witness for the defense was standing upon the rear platform, looking through the car, and testified to feeling the shock when the car struck the horse. He stated also that he saw the driver raise the whip in his hand, but denied that he made any flourish with it. His testimony was that when the horses reached Madison avenue, and the plaintiff was even with the car again, that he had words with the driver, and the horse nearest the car slipped and fell upon the ice which was there in the street. His testimony was given in such a manner as to convey the idea that the cause of the fall was not that of interference by the driver with the horses, but by the horses slipping upon the ice. This ice he stated in one of his answers to have been about four feet away from the rail, and in a further answer, about two feet from the car, when the horses went down, and that the car projected fourteen or fifteen inches beyond the track. His testimony was that he went upon the ice afterwards, and observed where the horses had slipped and fallen in the manner previously described by himself. A witness on behalf of the plaintiff was afterwards placed upon the stand, who testified that he occupied about the same position on the car as this witness for the defendant, and from there he would be unable to discern or discover occurrences with the ease or accuracy mentioned by the second witness for the defendant. The case, as it was in this manner presented, was one for the decision of the jury. A direct and striking conflict existed between the evidence of the plaintiff and the driver as to all the material occurrences after the horse had been struck by the car, and the evidence of the other two witnesses was not so certain or reliable as to deprive the plaintiff of the right to have the case decided by the jury. For it is quite evident from the testimony of the first witness examined for the driver that the horses may have been so agitated by the use made of the whip, even if the driver did not strike either of them, as to have fallen in consequence of his wrongful interference with them at this point upon the ice. The statement of the other witness depended to a considerable degree upon his observing the marks presented by the ice after the fall of the horses. But there was room in his evidence, as the ice was so near the car, for the jury to conclude that the horses had been interfered with by the car and the driver; substantially as the plaintiff stated they were, and in consequence of that interference slipped and fell upon the ice. The defense has by no means the strength it would have if these persons had been upon the street instead of upon the car, and had then observed and stated that the fall of the horses was in no manner attributable to the misconduct of the driver. The evidence of the other witness who was examined on the part of the plaintiff adds no very material weight to the probabilities of the case. He did see that the horse was struck by the car, and that the plaintiff was in the act of falling. But precisely what was the cause of the fall he does not appear to have been able to state. The case as it was tried, and in the absence of any statement that all the evidence was inserted in the printed book, was for the jury to consider and decide. The driver was clearly in fault for the collision between the car and the horses. He should have permitted them safely to have left the track before the car was brought so near as to strike the horse on which the plaintiff was riding. This was the origin of the difficulty, and, after that had occurred, the use which he made of his whip may very well have brought about the ac-

cident from which the plaintiff suffered. The verdict of the jury, therefore, should be held to have settled the controversy, and the order and judgment should be affirmed. All concur.